JOSEPH MURPHY and SARAH MURPHY v. WIL- LIAM N. BARRON, Appellant.

Division One, March 5, 1921.

1. **SECOND APPEAL:** Decision on Former Appeal. On a second appeal in the same case the decision on the former appeal is not *res judicata* in the full sense that the court cannot depart from it; but the general rule is that matters decided on one appeal will be considered settled on a second appeal in the same case, unless exceptional circumstances call for a re-examination of them.

2. ———: ———: **Reversal and Remandment: Directions.** Where, on appeal, the Supreme Court reverses the judgment and remands the cause with specific directions to the trial court as to the judgment to be entered or the course to be pursued, such directions are in the nature of a special power of attorney to the trial court, which must be strictly obeyed; but where the judgment is reversed and the cause remanded "for further proceedings in accordance with the opinion" it is no more than a simple reversal and remanding, and does not bring the case within the rule as to reversal with specific directions.

3. ———: ———: ———: ———: **New Facts.** Where on a re-trial of a case after a simple reversing and remanding, a new state of facts appears, such new state of facts constitutes exceptional circumstances within the rule stated above, and the trial court is bound by the prior decision only so far as the principles of law then declared are applicable to the new state of facts.

4. ———: ———: **Substantially Same Facts and Pleadings: Re-examination.** Where on a second appeal the facts and pleadings are

Murphy v. Barron.

substantially the same as on the former appeal, it is the duty of the Supreme Court to re-examine the questions decided on such former appeal when cogent and convincing reasons appear, such (1) as lack of harmony with other decisions and where no injustice or hardship will flow from a change, or (2) where by inadvertence principles of law have been incorrectly declared the first time, or (3) mistake of facts has been made, or (4) injustice to the rights of parties would be done by adhering to the first opinion.

5. ———: ———: ———: ———: Railroad Condemnation. In a contest between two claimants of a fund awarded in a condemnation case as damages for a railroad right of way through land, the fact that on the first appeal the record showed that the fund was paid to one claimant by the railroad company directly and on the second appeal it was paid to the circuit clerk after the decision of the court on the rival claims of the claimants and by the clerk paid to the successful claimant, is not such a difference of fact as of itself to call for a different ruling from that made on the first appeal.

6. ———: ———: Railroad Condemnation: Time for Paying Damages. Under Section 2362, Revised Statutes 1909, the condemning company has ten days after the final determination of the amount of damages, and not merely ten days after the award of the commissioners, within which to determine whether it will proceed with or abandon the condemnation, as erroneously held in the opinion on the former appeal.

7. ———: ———: ———: Interpleas For Award: Proceedings in Rem. The proceedings on the interpleas of rival claimants of an award of damages in a railroad condemnation case are not *in rem*.

8. ———: ———: ———: ———: Jurisdiction. Where the award of the commissioners in a railroad condemnation case has been filed in court, and the time has gone by within which the railroad company could abandon the proceedings as provided by Section 2362, Revised Statutes 1909, and such award shows that there are rival claimants of the damages awarded and these claimants voluntarily come in and file their several interpleas, the court has jurisdiction to determine such claims, even though the damages have not been paid into court. [Overruling Murphy v. Barron, 275 Mo. 282.]

9. ———: ———: ———: Reversal of Former Erroneous Ruling. Inasmuch as the former opinion in this case is in conflict with other decisions and inadvertently declares an incorrect rule in a matter of public concern, to-wit, a condemnation proceeding, and gives a wrong construction to an important feature of the condemnation statute and is out of line with respect to the character of the

interpleader proceedings, and the correction of such erroneous holdings will work no injustice to any one, this case falls within the exceptions to the general rule requiring adherence to a ruling on a former appeal.

10. **RES JUDICATA: Estoppel by Finding or Verdict: In Condemnation Proceeding.** Where the award of damages made by commissioners in a railroad condemnation case shows that there are rival claimants of the fund awarded, and such claimants file their respective claims in court and in such claims put in issue the title to the land, a part of which is condemned, and the record shows that the court tried the single issue of title, and its finding was upon that sole issue and the fund awarded accordingly, such finding is a conclusive estoppel upon the same parties on the issue of title to the land, of which that condemned was a part, in a subsequent suit between them to quiet title to the land and in ejectment to recover possession of it.

Appeal from Butler Circuit Court.—*Hon. Almon Ing*, Judge.

REVERSED AND REMANDED (*with directions*).

*Arnot L. Sheppard* for appellant.

(1) The court erred in not deducting from the amount of damages awarded respondents, the amount of taxes paid by appellant. Secs. 11508, 11509, R. S. 1909; Haarstick v. Gabriel, 200 Mo. 237. (2) The court erred in not rendering judgment for appellant. (a) The judgment of the Butler County Circuit Court in the condemnation suit was *res judicata* of the title to the land in controversy herein. In re Breck, 252 Mo. 302; Transportation Co. v. Traube, 59 Mo. 362; Spratt v. Early, 199 Mo. 501; Napa Valley Elec. Co. v. Board, 251 U. S. 366. (b) In a condemnation suit, the court acquires jurisdiction of both the subject-matter and the person, by the filing of the petition and service of notice thereof upon the landowners. Sec. 2361, R. S. 1909; Quayle v. Ry. Co., 63 Mo. 465; Ry. Co. v. Kemper, 256 Mo. 279; Ry. Co. v. Swan, 120 Mo. 30. (c) Respondent cannot question the jurisdiction of the circuit court in the con-

demnation suit, for three reasons: first, because the award was paid into court; second, because respondents voluntarily invited the court to pass upon the merits of the controversy, by filing their interplea; third, because respondents cannot collaterally attack the judgment on the interpleas. Butler County Railroad v. Barron, 173 Mo. App. 365; McClanahan v. West, 100 Mo. 322; Bensieck v. Cook, 110 Mo. 182; Royle Mining Co. v. Casualty Co., 161 Mo. App. 200-201; Union Depot Co. v. Frederick, 117 Mo. 138; Railway v. Donnovan, 149 Mo. 93; State ex rel. v. Bank, 211 S. W. 817; Fitzgerald v. Road District, 195 S. W. 695. (d) The court does not lose jurisdiction in a condemnation suit, merely because the award of the commissioners is not paid within ten days. In such case, the condemnation plaintiff merely loses the right to abandon the proceeding. After ten days the defendant landowner may enforce the award by execution. Sec. 2362, R. S. 1909; State ex rel. v. Lubke, 15 Mo. App. 152; State ex rel. v. Withrow, 24 S. W. 638. (3) Identity of the cause of action is necessary to support a defense of res judicata. "The cause of action is the basic facts which warrant the court in granting relief, or as we generally say, 'the facts constituting the cause of action.'" Hill v. Dillon, 183 S. W. 1088; Ingwerson v. Railroad, 150 Mo. App. 381; Litton v. Railroad, 111 Mo. App. 149; Thornton v. Smelting Co., 178 Mo. App. 38; 1 C. J. 940, and notes; Railroad Co. v. Dixon, 179 U. S. 139, 45 L. Ed. 125; Bradford v. Southern Ry. Co., 195 U. S. 248, 49 L. Ed. 180. (4) A former opinion in the same case is not always conclusive on second appeal. (a) This court has on many occasions reviewed our own decisions on second appeal, where no hardship would result to innocent parties, and reached different conclusions as to the law itself as well as to the facts of a case. Williams v. Butterfield, 214 Mo. 429; Wilson v. Beckwith, 140 Mo. 359; Bird v. Sellers, 122 Mo. 32; Rutledge v. Railroad, 123 Mo. 131. (b) The Supreme Court will not permit an injustice to be worked

by reason of a former opinion. Bird v. Sellers, 122 Mo. 32; Rutledge v. Railroad, 123 Mo. 131; Wilson v. Beckwith, 140 Mo. 370; Vaughn v. Railroad, 78 Mo. App. 643; Bealey v. Smith, 158 Mo. 522; Bank v. Douglas, 146 Mo. 53; Chambers' Admr. v. Smith, 30 Mo. 159; Sparks v. Brown, 46 Mo. App. 534. (c) The appellate courts are always open even upon second appeal for the correction of error and the administration of justice. Rutledge v. Railroad, 123 Mo. 131; Wilson v. Beckwith, 140 Mo. 370; Vaughn v. Railroad, 78 Mo. App. 643; Bird v. Sellers, 122 Mo. 32; Bealey v. Smith, 158 Mo. 523; Baker v. Railroad, 147 Mo. 152; Hamilton v. Marks, 63 Mo. 167; Hoagland v. Rys. Co., 209 S. W. 569. (d) The facts being essentially different from those on the former appeal, the Supreme Court will not be bound by its former opinion. Williams v. Butterfield, 214 Mo. 428; Armor v. Frey, 253 Mo. 447; Crispen v. Hannovan, 86 Mo. 168; Fuchs v. St. Louis, 167 Mo. 653; May v. Crawford, 150 Mo. 525; Vaughn v. Railroad, 78 Mo. App. 644; Grumley v. Webb, 48 Mo. 562; Parker-Washington Co. v. Transit Co., 165 Mo. App. 306; Armstrong v. Railroad Co., 203 S. W. 249; Benton v. St. Louis, 248 Mo. 98. (e) It is a matter of common knowledge that personal injury cases are reversed and remanded, retried upon different proof, and judgment affirmed. They are too numerous to cite more than a limited number. Case v. Bridge & Transit Co., 211 S. W. 99; Finnigan v. Railroad, 244 Mo. 662; Huskey v. Boiler Co., 187 Mo. App. 438, 192 Mo. App. 371, 188 S. W. 101. (5) The Supreme Court can quash a judgment of one of the Courts of Appeals, only when it acquires jurisdiction of the case by certification or by *certiorari;* and then not merely because it considers the opinion of. the Court of Appeals erroneous, but only when the opinion is contrary to the last controlling decision of the Supreme Court. Therefore, even though this court may consider the judgment in the condemnation case incorrect, said adjudication is controlling upon this court, in the absence of a writ of *certiorari,* or certification by

one of the judges of the Springfield Court of Appeals. Harrison v. Jackson County, 187 S. W. 1183; State v. Reynolds, 214 S. W. 121; State ex rel. v. Mining Co., 262 Mo. 501. (6) Admitting for the sake of argument only, that the judgment in the condemnation suit is not technically *res judicata*, respondents are now estopped to claim title to the land in controversy. (a) A former judgment is conclusive in a second suit, as to all questions which were actually in issue and adjudicated in the former suit, even though the two cases were not upon the same cause of action. Case v. Sipes, 217 S. W. 309; State ex rel. v. Mining Co., 262 Mo. 501; Garland v. Smith, 164 Mo. 22; Gymnastic Society v. Hagerman, 232 Mo. 693; Dickey v. Heim, 48 Mo. App. 118; Barkhoefer v. Barkhoefer, 93 Mo. App. 381; Paving Co. v. Field, 132 Mo. App. 628; Roberts v. Neal, 137 Mo. App. 115; Hartwig v. Ins. Co., 167 Mo. App. 130; Napa Valley Elec. Co. v. Board, 251 U. S. 366; New Orleans v. Bank, 167 U. S. 371, 42 L. Ed. 211; Cromwell v. Sac County, 94 U. S. 353, 24 L. Ed. 198; Bigelow, Estoppel (3 Ed.), pp. 51, 29, 57, 103; Aurora v. West, 74 U. S. (7 Wall.) 102; Van Pelt v. McGraw, 4 N. Y. 113; Bryan v. Atchison, 2 La. Ann. 462; Scuddy v. Schaffer, 14 La. Ann. 576; Plicque v. Perret, 19 La. 318; Gilman v. Horseley, 5 Mart. (N. S.) 664; Dufour v. Camfranc, 11 Mart. 607; Patterson v. Bonner, 14 La. 233; Martin v. Martin, 5 Mart. (N. S.) 170; Freeman v. Barnum, 131 Cal. 386; Keohler v. Mfg. Co., 146 Cal. 335; Markley v. People, 171 Ill. 260; Reynolds v. Randel, 175 Ill. 615; Rowell v. Smith, 123 Wis. 510; Freeman on Judgments, sec. 253; 24 Am. & Eng. Ency. Law (2 Ed.), p. 780; Moran v. Vicroy, 77 S. W. (Ky.) 668. (b) Respondents are concluded by the former litigation, not only as to all questions within the pleadings and decided thereunder, but as to every other matter fairly within the issues in said cause. Richardson v. Dell, 191 S. W. 63; Harrison v. Jackson County, 187 S. W. 1184; Barnhart v. Little, 185 S. W. 177; McClure v. Bank, 263 Mo. 136; Hines v.

Hines, 243 Mo. 495; Tie & Timber Co. v. Pulliam, 237 Mo. 18; Emert v. Aldredge, 231 Mo. 128; Spratt v. Early, 199 Mo. 500; Donnell v. Wright, 147 Mo. 647; Mo. Pac. Ry. Co. v. Levy, 17 Mo. App. 507; Bates v. Bodie, 245 U. S. 526, 62 L. Ed. 449.

*Henson & Woody* for respondents.

(1) The decision of this court on the former appeal to the effect that the judgment rendered against respondent Joseph Murphy in the tax suit is void, is the law of this case upon this appeal and is binding on this court. As to this court, it is *stare decisis.* Murphy v. Barron, 205 S. W. 49; Drainage District v. Bates County, 216 S. W. 949; Knisely v. Leathe, 178 S. W. 457; State ex rel. v. Spencer, 166 Mo. 272; Carey v. West, 165 Mo. 452; Thompson v. Pinnell, 199 S. W. 1014. (2) The title to the real estate which is the subject-matter of this suit was not involved in the issue made by interpleas filed by respondent and appellant in the suit of the Butler County Railroad Company to obtain a right-of-way over the same. The controversy was over the fund only. The judgment rendered there did not affect this title. Hilton v. St. Louis, 129 Mo. 389; Davis v. Watson, 158 Mo. 192; Cox v. Baker, 150 Mo. 424; Price v. Blankenship, 144 Mo. 203; Railroad Co. v. Barron, 173 Mo. App. 368; Schroer v. Brooks, 200 S. W. 1068; Fisher v. Johnson, 139 Mo. 437; Rothrock v. Mining Co., 146 Mo. 57; Heman v. Wade, 141 Mo. 601; Kennedy v. Duncan, 224 Mo. 664-5; Cox v. Barker, 150 Mo. 424; McKinney v. Lumber Co., 192 Mo. 34-5; Brannock v. Magoon, 216 Mo. 727; Stough v. Light Co., 217 S. W. 519; Brick Co. v. Lane, 205 S. W. 801. (3) No act of the parties to the interplea, not even their consent, could have made the title an issue so as to confer jurisdiction on this court. Stough v. Light Co., 217 S. W. 519; Marshall v. Reddick, 177 S. W. 381. (4) All of the issues presented on this trial were presented

on the former trial, and all the evidence introduced was or could have been introduced in that trial. The decision of this court on appeal from the judgment there rendered, is a final determination of those issues, and they may not again be litigated. Donnell v. Wright, 144 Mo. 203; Emmert v. Aldridge, 231 Mo. 124; McClure v. Bank, 263 Mo. 134; St. Louis v. United Rys., 263 Mo. 423; Richardson v. Dell, 191 S. W. 64; Ogden v. Auer, 184 S. W. 73; Williams v. City of Hayti, 184 S. W. 473; Julian v. Monument Co., 187 S. W. 584.

JAMES T. BLAIR, P. J.—This is a second appeal (Murphy v. Barron, 275 Mo. 282) in a suit to quiet title in ejectment which respondents instituted in 1914. As appears from the record and the former opinion, Joseph Murphy owned the land prior to 1901. In that year a suit was commenced against him for back taxes on the tract here in question and service obtained. The case was not tried until June, 1903. Murphy was then in the penitentiary. In October, 1903, the land was sold under the tax judgment to Green who, three days later, conveyed to the present appellant. After his release in 1905 Murphy took possession of the tract and retained it until 1914, when he was ousted under a judgment in an action this appellant had brought against the Baurtons in 1904, as more fully appears from the former opinion. Murphy had conveyed the tract to Baurton in 1902, and Baurton reconveyed to Murphy and his wife, these respondents, in 1904. August 11, 1911, the Butler County Railway began proceedings to condemn a right of way across the tract and made the present respondents and appellant and one Horton defendants thereto, alleging that all claimed the land and that it did not know which had title. September 18, 1911, commissioners were appointed who qualified and, on September 29, 1911, filed their report in which they "assessed as damages to the owners" (of the tract in suit) "to-wit, William N. Barron,

M. C. Horton or Joseph Murphy, the true owner here-
of to be declared and decreed by the court upon the
trial of this cause, for said strip taken, the sum of $100.''
On March 5, 1912, Murphy filed in that case a motion
to require the Butler County Railroad to pay into the
court the amount of the award ''to the end that said
defendants may interplead for same.'' This motion
was overruled on March 8, 1912, and in the order the
court granted Murphy ''leave to answer or plead on or
before the first day of the next regular term of this
court, to which this cause is continued.'' Thereafter
Barron, the present appellant, and Horton filed a plead-
ing in the nature of an interplea admitting they claimed
title to the tract, alleging they were the owners there-
of, denying that the Murphys had any interest there-
in, and praying a decree and order that the damages
awarded by the commissioners be directed to be paid
to them, Barron and Horton. Joseph and Sarah Mur-
phy, the present respondents, also filed in those pro-
ceedings their plea in the nature of an interplea in
which they alleged they were the owners of the land
affected and entitled to the $100 awarded by the com-
missioners as damages for the taking of the right of
way across it. They denied Barron and Horton had
any interest in the land and prayed judgment ''in the
sum of $100 and costs.'' The court heard the evidence
on these conflicting claims, found that Barron was the
owner of the land, that he was entitled to the $100
awarded as damages for the taking of the right of way,
adjudged that Joseph and Sarah Murphy had no title
to or interest in or to the land or to the $100 damages
awarded by the commissioners, and ''that upon the
payment into court by the plaintiff of the sum aforesaid
that the said W. N. Barron be entitled to the said sum
of $100,'' and adjudged the costs of the proceeding
against the Murphys. From this judgment Joseph and
Sarah Murphy appealed to the Springfield Court of
Appeals, where the judgment was affirmed. [Railroad

v. Barron et al., 173 Mo. App. 365.] In that proceed-
ing and on the issue concerning the right to the $100
fund the evidence was confined to the question of title
to the land. In this case appellant called Wm. Mc-
Guire, Circuit Clerk of Butler County, who testified he
was circuit clerk at the time of the trial of the issues
between respondents and appellant and Horton on May
2, 1912. He produced a receipt which reads as follows:

"Poplar Bluff, Missouri, May 23, 1912.

"Received of William McGuire, Circuit Clerk of But-
ler County, Missouri, the sum of one hundred ($100)
dollars, payment in full for a strip of ground taken for
railroad right of way by the Butler County Railroad
Company, a corporation, which strip of ground is more
particularly described in the report of the commission-
ers filed in this court on the 29th day of September, 1911;
and the above amount being the amount awarded by said
commissioners.

"WILLIAM N. BARRON,
By EARL V. WALKER."

McGuire testified he had no record of the receipt of
this sum from the Butler County Railroad Company;
that he paid it to Walker, Barron's agent, on the date
named in the receipt and took the receipt for it; that
funds of the kind did not go upon his abstract of fees
collected but were listed by him and kept in a separate
trust fund account; that this list was revised and re-
written as payments were made from it and old lists
then destroyed; that he did not pay it out if his own
money but that the sum came to him from the Butler
County Railroad; that he had no recollection when the
money was paid to him. Appellant testified that the
Butler County Railroad did not pay the $100 award to
the circuit clerk until after May 2, 1912, but that it was
paid in before May 23, 1912, when he received the money.
Other facts appear from the opinion on the former ap-
peal. On the second trial the Murphys had judgment,
and this appeal followed.

I.   On the former appeal in this case it was held, among other things, that the Butler Circuit Court had no jurisdiction to try the issues made by the interpleas of respondents and appellant and Horton in their contest for the damages awarded the owners of the land involved in that and in this case, and that, consequently, the trial and judgment in that proceeding could constitute no obstacle to the assertion by respondents against appellant of title in this case.   Appellant contends the decision on the former appeal was wrong on the record then before this court, is wrong for the same and additional reasons on the present record, and that the question should be re-examined.   Respondents insist the holding on the former appeal was such a determination of the question that it is not now open to examination.

*Second Appeal: Effect of Decision on Former Appeal.*

(1)   The decision on the former appeal is not *res adjudicata* in the full sense.   [Mangold v. Bacon, 237 Mo. l. c. 517.]   It is not a judgment from which the court cannot legally depart on this second appeal in the same case.   Under the decisions in this State it was not an absolute and final determination of all matters decided of such inexorable force that the court must adhere to it on this appeal at all events and whether it be right or wrong.   The general rule is that matters decided on one appeal will be considered settled on a second appeal in the same case, unless exceptional circumstances call for a re-examination of them.   A discussion of the nature of the exceptional circumstances which warrant a re-examination of questions decided on a former appeal is found in the case above cited.   It follows that the decisions cited by respondents (Donnell v. Wright, 147 Mo. l. c. 647, and the like) in which this court considered the effect in a second action of a previous and final adjudication of same matter are not in point.

(2)   Respondents also rely upon the rule announced in McLure v. Bank, 263 Mo. l. c. 136, and cases cited.

Those cases deal with the effect of a reversal of a judgment and remandment of a cause with specific directions to the trial court as to the judgment to be entered or the course to be pursued.  In such cases it becomes the duty of the trial court to do the things directed. The "mandate is in the nature of a special power of attorney" (Keaton v. Jorndt, 259 Mo. 1. c. 190) and the trial court has no power "to enter any other judgment, or to consider or determine other matters not included in the duty of entering the judgment as directed."  [Stump v. Hornback, 109 Mo. 1. c. 277; Chouteau v. Allen, 74 Mo. 1. c. 59.]  In case directions are given it is its duty "to do those things and those things only which it is directed to do by the mandate contained in the judgment"  (Keaton v. Jorndt, supra) which in that case included a direction to enter judgment with respect to designated parties and to try a specified issue.  If no directions are given on a first appeal and there is "a simple reversal and remanding" the rule does not apply.  [Chouteau v. Allen, supra.]  In the instant case the judgment was, on the first appeal, reversed and the cause was "remanded to the Butler Circuit Court for further proceedings in accordance with this opinion."  [Murphy v. Barron, 275 Mo. 1. c. 297.] This is no more than a "simple reversal and remanding."   The words "for further proceedings in accordance with this opinion" added nothing which would not have been necessarily implied had they been omitted. Every case which is remanded is remanded "for further proceedings" whether those words are used or not, and such further proceedings are expected to be "in accordance with" the opinion rendered.  That they may be is perhaps one of the purposes of the requirement that opinions must be in writing.  The words used do not import a direction of specified things, which is necessary to bring the case within the rule concerning reversals and remandments "with directions." In Quisenberry v. Chenault, 30 Ky. L. Rep. 229, 97 S.

W. 803, the Court of Appeals of Kentucky reversed a judgment on a verdict returned on an issue submitted out of chancery and remanded the cause "for proceedings consistent with the opinion." The trial court, on motion, entered judgment for the party successful on the appeal. It was held the court should have resubmitted the issue to a jury, conforming its rulings on evidence and instructions to "the opinion of this court." It was further held that unless the evidence was in substance the same a peremptory instruction should have been given. On the next previous appeal (Chenault v. Quisenberry, 26 Ky. L. Rep. 462, 81 S. W. 690) the court had held, in effect, that the evidence for plaintiff on the trial there reviewed was not sufficient to support a verdict for him. It was this holding it had in mind when it said that a peremptory instruction for defendants should be given if the evidence was substantially the same. The decision is some authority for the proposition that a remandment "for proceedings consistent with this opinion" does not amount to a remandment with directions within the rule respondents invoke. It is the general rule that unless from an opinion it is apparent finality was intended it will not be implied from it. [Ryan v. Tomlinson, 39 Cal. l. c. 646; Myers v. McDonald, 68 Cal. l. c. 164, 165.] It seems hardly open to question that every remandment is made "for further proceedings" and that such proceedings are intended to be "in accordance with the opinion;" that the use of the words mentioned adds nothing, as stated. To apply, because of them, the rule invoked, would amount to transforming every reversal and remandment into a reversal and remandment "with directions" and would leave this court at a loss to explain the pains to which it has gone to distinguish a simple reversal and remandment from one with directions. The terms are constantly used and do not have the meaning which respondents ascribe to them; and the point is so ruled.

(3) When a new state of facts appears on a retrial following an appeal, the trial court is "bound only by our decision on the former appeal to the extent that if the same facts appeared, it would follow our decision." [Williams v. Butterfield, 214 Mo. 1. c. 429; Fuchs v. St. Louis, 167 Mo. 1. c. 652, 653.] "If the facts on the trial anew present a different case from that presented on the first trial to the appellate court, the trial court will be bound by the prior decision only so far as the principles of law then declared are applicable to the new state of facts." [May v. Crawford, 150 Mo. 1. c. 525; Benton v. St. Louis, 248 Mo. 1. c. 102, 103; Finnegan v. Railroad, 244 Mo. 1. c. 662, 663.] None of which is to be understood to exclude the rule referred to under (1) supra.

(4) Is this case within the exceptions to the general rule that a decision on appeal becomes the law of the case on a re-trial following the return of the case to the trial court? In Mangold v. Bacon, supra, the rule respecting a re-examination, on substantially the same facts and pleadings, of questions decided on a former appeal is stated as follows: "Whether from grace or right, when cogent and convincing reasons appear, such (1) as lack of harmony with other decisions and where no injustice or hardship would flow from a change, or, (2) where by inadvertence principles of law have been incorrectly declared the first time, or (3) mistake of fact has been made, or (4) injustice to the rights of parties would be done by adhering to the first opinion, then the exceptions to the rule have play and it is our duty to re-examine and correct our own errors on the second appeal in the same case."

The question we are asked to examine is that which concerns the jurisdiction of the Butler Circuit Court to try the issues on the pleas in the nature of interpleas in the condemnation proceedings. In the former opinion it was stated that the $100 awarded by the commissioners in the condemnation proceedings to cov-

er the value of the appropriated part of the tract in suit was never paid into court, but that the fund was paid directly to Barron, the appellant here. It was said that the judgment for the payment of the money was rendered in the exercise of an extraordinary power, condemnation of private property for public use, and that such power could be exerted only "where the plain letter of the law permits it and under a careful observance of the formalities prescribed for the owner's protection." Attention was called to the fact that the condemnor could not take possession until the damages awarded were paid to the owner or paid into court for him, and it is restated that the $100 was never "paid into court for any purpose"—that the money was in possession of the railroad company. The opinion then states the question to be whether, in the circumstances stated, "the court acted within its jurisdiction in making the order that it (the fund) be paid by the railroad company directly to this respondent" (appellant here) "so that its act amounted to an adjudication of this title." Attention was called to the fact that Barron was both the managing officer of the railroad and a claimant of the fund and that the road did not complete the condemnation by paying the money, but kept it and "stood by to await" what Barron "might do in its interest or his own, as the case might be." It was also stated and somewhat stressed that it was necessary for the railroad company to pay to "the circuit clerk the amount assessed within ten days from the filing of the report, unless it should elect within that time to abandon the" proceedings. It was pointed out that the issue on the interpleas concerned only the fund and involved nothing which concerned the railroad. The opinion holds that the prompt payment of damages is required so that the public will suffer no delay and so that claimants of the property may promptly press their conflicting claims for the fund which then stands in lieu of the land taken; and that the company may not use its "extraordinary

powers . . . in aid of a personal controversy." The opinion concludes: "The jurisdiction of the court in the determination of such collateral controversies arises from the possession of the fund alone. The proceeding is *in rem* and jurisdiction cannot exist without the *res.* It was no more effective to determine which would be the owner of the land than would be the determination of arbitrators outside of court. It is unnecessary to determine what effect a judicial determination of the ownership of such a fund in the hands of the clerk might have upon the collateral question of ownership of the remaining land."

First, as to the difference in the facts of this and the former record.

(a) The record on the first appeal did not show the truth of the matter respecting the payment of the fund to Barron. It was not in fact paid to him by the Butler County Railroad, but was paid to him by the Circuit Clerk of Butler County. It was paid to the clerk, however, after the trial of the issues on the so called interpleas, and was not in his hands at the time of that trial. It does not appear in what way this difference in the facts could affect the ruling made. There is, so far as concerns any principle announced or applied in the former opinion, no substantial difference between a payment, after the trial of the interpleas, to Barron by the clerk and a payment to him by the railroad company. The basis of the decisive ruling is the fact that the fund was not in court when that trial was had. That fact is the same on both records and is now testified to by appellant. This seems to be the only suggested difference in the facts and is not such a difference as to call, of itself, for a different ruling.

(b) If the former opinion is to be understood to hold that the effect, under Section 2362, Revised Statutes 1909, of a failure of the railroad to pay the damages awarded into court within ten days after the award was made was to work an abandonment of the proceed-

ings, it is brought into conflict with State ex rel. v. Fort, 180 Mo. l. c. 112, et seq., and an opinion in State ex rel. v. Withrow, 24 S. W. 638, which, though it is unofficial, is the expression of the view of four learned and eminent judges of this court. The true rule, so far as concerns the question here, is that the condemning company has ten days after the final determination of the amount of damages within which to decide whether it will proceed or abandon. It was also held in the former opinion that the proceeding on the interpleas was one *in rem*. This is not the case even under a bill of interpleader. Maclennan on Interpleader, pp. 76, 77.

(c) From this record, the dates already given, the character of the interpleas, and the course pursued it is clear the award had become final and that no proceeding for a re-assessment under Section 2362, Revised Statutes 1909, was pending or allowable after the lapse of time shown. It follows that there was an existing and final award or judgment (Martin v. St. Louis, 139 Mo. l. c. 259, 260; Union Depot Co. v. Frederick, 117 Mo. l. c. 146, et seq.) enforcible by execution under Section 2362, Revised Statutes 1909, against the condemning railroad and in favor of "the party entitled to such damages." In this situation Joseph Murphy filed his motion for payment of the fund into court so that "defendants may interplead for same." The trial court was thus confronted with a motion, in effect, for execution by one claimant when both the petition in condemnation, the terms of the award of the commissioners, and Murphy's motion itself had advised it that Barron and Horton also claimed the whole award. "The party entitled to the damages" had not been determined. The motion could not well be sustained until that was done. The court overruled it. Thereupon the Murphys and Barron and Horton filed pleas in the nature of interpleas, each side claiming title to the land and the fund and denying that the others had any title or interest therein. Barron and Horton asked that the fund be

ordered paid to them, and the Murphys asked judgment for it and for costs. They invoked the judgment of the court and the court heard them. The evidence related solely to the title of the respective parties. The court found that Barron owned the land and was entitled to the award and that the Murphys had no title to the land and no interest in the award and ordered the money to be paid over to Barron when paid into court. This order or judgment became final and Barron was paid the $100. On the former appeal it was held this judgment was a nullity because the fund was not in court at the time of the trial of the pleas and the court had no jurisdiction or power to try them until it was in court. If this ruling was the law when made here, it was the law when the issue on the interpleas was made up, and the trial court was at that time in this situation: It had before it an award, final and enforcible by execution in favor of the "party entitled" to it. It could not issue an execution to bring in the fund until it determined who was so entitled, and it could not, if the former opinion is right, determine who was entitled until it secured the fund, the payment of which could be coerced only by execution in favor of the "party entitled" to the fund. It had power to require the contending claimants to interplead. It has been so held. [K. C. & Atl. Ry. v. View, 156 Mo. l. c. 618; Hilton v. St. Louis, 99 Mo. l. c. 206, 207.] The parties made no objection to the informal manner in which they were brought, or came to issue. They came in voluntarily. It is obvious they cannot now raise formal objection to the pleadings. The present attack upon the judgment is collateral. The issue as to the right to the fund was clearly enough made and was tried. It is required in most jurisdictions that in formal bills of interpleader the fund be brought into court or that the bill contain an offer to bring it in. [Williams v. Walker, 2 Rich. Eq. (S. C.) l. c. 294, 295; Phoenix Ins. Co. v. Carey, 80 Conn. l. c. 432; 23 Cyc. 23; 15 R. C. L. 230.]

We have not been able to find authority for the proposition that in such a proceeding when a suit has proceeded, without objection, interpleas have been filed and the issue tried, that the decree can be held void on collateral attack merely because the fund was not actually in court when the hearing was had and the decree entered. The reason for requiring the payment of the fund into court or an offer in the bill to pay it in is that the court may take control of the fund before discharging the plaintiff who files the bill, and to prevent abuse of the proceedings. [Home Life Ins. Co. v. Caulk, 86 Md. l. c. 388; Story's Eq. Pl. sec. 291; Bliss v. French, 117 Mich. l. c. 540, 541.] The omission of an offer to pay the fund into court, though it is not in fact paid in, does not render the bill demurrable according to some decisions. [Blue v. Watson, 59 Miss. l. c. 625; Bliss v. French, supra.] It is otherwise in some other jurisdictions. If no injunction is asked it is said to be sufficient to offer to pay in and be ready to do so when directed. [Shaw v. Chester, 2 Edw. Ch. l. c. 406.] The failure to make such an offer in the bill is waived if no objection is seasonably made. [Cobb v. Rice, 130 Mass. l. c. 234.] The court took jurisdiction and rendered judgment in the absence of the fund in Dunton v. Sharpe, 11 So. 168, treating the objection as waived. Doubtless, in such proceeding the court can and should require the fund to be paid in before proceeding under the bill.

This case was not strictly an interpleader suit. It was a contest over a fund to which one of the claimants was entitled. The Missouri cases already cited show the court had jurisdiction to settle the controversy between the conflicting claimants. We are not now prepared to hold that the absence of the fund deprives the court of such jurisdiction in a case in which payment of the fund into court can be compelled only by execution and the execution can only be issued after a trial of the ownership of the fund by a court having jurisdiction.

So to hold would be to hold that a valid judgment could not be enforced at all, except at the will of the judgment debtor. We are of opinion that we were in error in the circumstances of this case in holding the contrary on the former appeal.

(d) The former opinion is in conflict with other decisions; it inadvertently declares an incorrect rule in a matter of public concern, i. e. condemnation proceedings; it seems to give a wrong construction to an important feature of the condemnation statute; it is out of line with respect to the character of interpleader proceedings. No injustice can be done to third parties by changing the holding and none is done respondents unless it be an injustice in every case to correct an erroneous holding once made and found the decision upon a correct view of the law rather than upon some other. This is not the sort of "injustice" which prevents the exceptions to the general rule from applying. We hold the former decision comes within the exceptions. This make it necessary to determine whether the finding or judgment on the interpleas bars respondents' present claim of title.

II.  Does the trial of the question of title in the contest over the ownership of the **Res Judicata: Estoppel by Finding or Verdict.** $100 fund and the final judgment adverse to respondents thereon estop them to relitigate the question of title in this case and as against appellant, who was successful as against respondents in the contest over the fund?

(1) The judgment in the contest over the fund did not directly affect the title to the land in such sense as to give this court jurisdiction of the appeal in that proceeding. It was so held in Hilton v. St. Louis, 129 Mo. l. c. 391, 392, on facts somewhat like those in this case. In that case, as in this, on the trial of the rights of parties defendant in condemnation proceedings to the fund awarded the sole question in issue was the ownership of the land taken and damaged, but it was held

this court had no jurisdiction because the judgment in that controversy did not directly affect title. That case and others hold that to give this court jurisdiction it is not enough that the pleadings draw in question the title or that a determination of title is necessary to a solution of the issues, but to give jurisdiction here on that ground the judgment sought or rendered must directly affect or operate on the title itself. [Davis v. Watson, 158 Mo. l. c. 196; Price v. Blankenship, 144 Mo. l. c. 205, et seq.; Cox v. Barker, 150 Mo. 424; Kennedy v. Duncan, 224 Mo. l. c. 664, 665, and cases cited; Rothrock v. Lumber Co., 146 Mo. l. c. 58, 59; Stough v. Light & Power Co., 217 S. W. l. c. 519, and cases cited.] The judgment in this case had no such effect. That rule is applied because of a constitutional direction that jurisdiction shall be taken by this court on appeal when title to real estate is involved and because of the construction given by this court to that mandate.

(2) It does not follow from this rule, which governs appellate jurisdiction, that title was not tried on the interpleas in such sense as to bar a relitigation of that question between the parties to this case. That depends upon a different principle. As stated, the statute, as does the Constitution, gives the award to the owner of the land taken and damaged; the interpleas put the title in issue; the record here conclusively shows the court tried that single issue, and that its finding was upon that issue. It was upon this sole issue that the right to the award depended and was determined. Though the cause of action be different, yet are respondents estopped by the verdict or finding "as to the point or question actually litigated and determined in the original action." [State ex rel. Water Co. v. Eastin, 278 Mo. l. c. 668, 669; State ex rel. v. Mining Co., 262 Mo. l. c. 501, 502; Hickerson v. City of Mexico, 58 Mo. l. c. 64, 65; Estes v. Nell, 140 Mo. l. c. 646, 649, 650; State ex rel. v. Branch, 134 Mo. l. c. 603, 604; Sampson

v. Mitchell, 125 Mo. 1. c. 230; Scouce v. Long Bell Lbr. Co., 54 Mo. App. 1. c. 512, 513.] Mr. Bigelow denominates estoppel of this kind as estoppel by verdict. [Bigelow on Estoppel (6 Ed.), p. 100, et seq.] He quotes (pp. 104, 105) with approval from Outram v. Morewood, 3 East, 346, in which Lord Ellenborough said: "But if it be said that by the freehold coming in debate must be meant a question respecting the same in a suit in which the freehold is immediately recoverable, as in an assize or writ of entry, I answer that a recovery in any one suit upon issue joined on matter of title is equally conclusive upon the subject-matter of such title." [See further: Baumhoff v. Railroad, 205 Mo. 1. c. 263, et seq.; 15 R. C. L. sec. 450, p. 973, et seq.]

(3) The actual issue made concerned the title to the whole forty acres across which the right of way ran. The evidence related in all respects to the title to the entire tract. The deeds and records offered included the whole. The sole effort of each party was to show title to the whole and by this means substantiate his claim to the fund which represented but a part of the whole. Is the estoppel of the finding or verdict limited, in these circumstances, to the strip taken for right of way or does its bar extend to this controversy over the title of that part of the forty acres not taken for right of way? Let it be conceded that a grantee of the Murphys might not have been estopped in a contest with appellant over the title to the tract involved in this case under the principle announced in Hart v. Moulton, 104 Wis. 1. c. 353, et seq., and Grunert v. Spalding, 104 Wis. 1. c. 225; that estoppel of those in privity is limited to the very subject-matter in question when the judgment was rendered. Those decisions further announce, in contrast, that the estoppel, as between the parties, is personal and extends to the whole issue litigated, though the subject-matter be different.

In Brack v. Boyd, 211 Ill. 290, it was held that a judgment of title in plaintiffs to one tract, based upon

a finding that the adoption of their mother had been valid, was conclusive as against the same defendants in an action by the same plaintiffs for partition of another tract. It was held the decision of the issue of adoption in the first case could not be questioned in the second case. The court cited Hanna v. Reed, 102 Ill. 596, in which a judgment in Indiana, which held invalid a deed to a tract of land in that state on the ground that the grantor was incompetent, was held conclusive on that question in a suit in Illinois between the same parties to set aside a conveyance by the same grantor, at the same time, of a tract in that state. In Preston v. Harvey, 2 Hen. & M. (Va.) l. c. 63, it is said: "It has long since been settled that a verdict on the same point and between the same parties may be given in evidence, though the lands are not the same, if the matter was in issue in the former case."

In Last Chance Mining Co. v. Tyler Mining Co., 157 U. S. 683, the court had under review the record of the Court of Appeals in an action begun by the Tyler Company against the Last Chance Company to recover possession of a portion of a mineral vein and the value of ores previously taken therefrom. On one phase of the case the priority of location as between the mining claims of the two companies was "a pivotal question." The Last Chance Company offered in evidence a judgment in its favor in a former action it had brought against the Tyler Company in which the controversy immediately concerned a triangular parcel covered by both claims, an interlock. The question in that action was that of priority of location of the respective claims. The case considered in 157 U. S. 683, did not concern the parcel which was the subject-matter of the former action but involved other property contended to be within the locations. The Court of Appeals had excluded the judgment. While the parcels of realty were different, yet it was held the decisive question, priority of location, had been adjudicated in the former action be-

tween the same parties as to a part of the claim included within the same location covering the property involved in the second action.    Calling attention to this the court said: ''The particular matter in controversy in the adverse suit was the triangular piece of ground, which is not the matter of dispute in this action. The judgment in that case is therefore not conclusive in this as to matters which might have been decided, but only as to matters which were decided.''    The court held the former judgment admissible.   In New Orleans v. Citizens Bank, 167 U. S. 1. c. 396, and cases cited, several applications of the rule can be found.    In Custer v. Hall, 71 W. Va. 1. c. 123, it is held that an adjudication of the title to a particular tract of land, or an undivided interest therein is conclusive between the same parties with respect to the title to another tract claimed adversely by them, in the same manner and under the same chain of conveyances.    In Bigelow on Estoppel, pp. 177, 181, 169, 170, it is stated ''that by the weight of authority the judgment is conclusive upon all issues which have become necessary to the decision of the case, whatever their relation to the cause of action.''    The cases cited give the reasons for the principle and the case at bar falls well within them.

(4)    The adjudication of the issue in the former case is evidence, and in this case it is conclusive evidence because the pleadings, the record, the very judgment rendered, show the trial, as the sole issue in that case, of the issue determinative of this case.    [Herman on Estoppel, sec. 106, p. 107, et seq.]

The judgment is reversed and the cause remanded with directions to enter judgment for defendant.    All concur.